FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 18, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARK R. HUTCHINSON,

Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

Defendant.

No. 2:15-CV-0293-JTR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 19, 21. Attorney Dana C. Madsen represents Mark R. Hutchinson (Plaintiff); Special Assistant United States Attorney Tina R. Saladino represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 9. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI) in November 2010,

alleging disability since June 1, 2010, due to heart problems; memory loss; problems with his right side due to strokes; back issues; "plantersaphesio"; multiple personality disorder; adult ADHD; and right arm, shoulder and wrist issues. Tr. 395-396, 400.

Administrative Law Judge (ALJ) R.J. Payne held a hearing on April 27, 2012, Tr. 41-87, and issued an unfavorable decision on May 21, 2012, finding Plaintiff could perform his past relevant work as a barber, Tr. 201-208. However, the Appeals Council ordered a remand on July 24, 2013, based on newly submitted evidence which indicated Plaintiff had been referred for evaluation of Parkinson's disease based on pronounced tremors in his left hand. Tr. 212-215. ALJ Payne held a hearing on remand on November 25, 2013, Tr. 636-645, and supplemental hearings on February 25, 2014, and July 25, 2014, Tr. 88-133. ALJ Payne issued another unfavorable decision on September 8, 2014, Tr. 14-29, and the Appeals Council denied review on August 24, 2015. Tr. 1-7. ALJ Payne's September 2014 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 20, 2015. ECF No. 1, 4.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on May 16, 1957, and was 53 years old on the alleged disability onset date, June 1, 2010. Tr. 61, 395. Plaintiff obtained his GED in 1978 and later completed vocational training in cosmetology. Tr. 401. Plaintiff has past relevant work as a barber. Tr. 401. He indicated he stopped working on June 1, 2010, because of his condition. Tr. 400.

At the administrative hearing on April 27, 2012, Plaintiff testified he stopped working in 2010 after dropping his clippers on the job and injuring a customer. Tr.

63. He stated he has numbness and swelling in both hands on an everyday basis which causes him to drop things. Tr. 65-66. Plaintiff also indicated he fell off a roof and injured his back in the early 1980s, has problems with his left arm as a result of a car accident, and soreness in his ankles from an injury sustained as a teenager. Tr. 70-74. Plaintiff testified he also has memory issues he attributes to a 1996 stroke following a cocaine overdose. Tr. 76.

At the initial hearing on remand, Plaintiff testified he had visited a neurologist, Dr. Wurst, and was informed he did not have Parkinson's disease. Tr. 639. Plaintiff stated he was told he just had a tremor and nothing could be done to treat the tremor. Tr. 639. At the February 25, 2014, supplemental hearing, medical expert James Haynes, Ph.D., confirmed that neurologist Wurst reported Plaintiff's tremor of the left hand did not have the characteristics of Parkinson's disease. Tr. 93. Plaintiff testified on July 25, 2014, that he continued to have a tremor which was worse in his left, dominant hand. Tr. 105. Since the February 25, 2014, hearing, Plaintiff had visited the emergency room for chest pain, where it was determined there was no evidence of acute cardiopulmonary process but a diagnosis of costochondritis (an inflammation of the cartilage that connects the ribs to the sternum) was supported. Tr. 106-108. Plaintiff additionally reported he had since been diagnosed with emphysema, but continued to smoke a pack of cigarettes every two to three days. Tr. 108-109.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**ADMINISTRATIVE DECISION**

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 1, 2010, the alleged onset date. Tr. 17. At step two, the ALJ determined Plaintiff had the following severe impairments: left hand tremors of unknown origin; cognitive disorder not otherwise specified; pain disorder associated with both psychological factors and a general medical condition; and personality disorder not otherwise specified with antisocial and identity features. Tr. 17.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 18. The ALJ assessed Plaintiff's RFC and determined he could perform a full range of work at all exertional levels, but with certain limitations. Tr. 20. The ALJ found Plaintiff could frequently, rather than continuously, perform handling and occasionally finger with his left hand and would have mild to moderate (defined as no more than 5% interference on the ability to function in a work setting) limitations in his abilities to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in work settings. *Id*.

At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a barber. Tr. 27. However, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of industrial cleaner, machine packager, and motor vehicle assembler. Tr. 27-28. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from June 1, 2010, the alleged onset date, through the date of the ALJ's decision, September 8, 2014. Tr. 28-29.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred in this case by (1) improperly discrediting Plaintiff's symptom allegations; (2) failing to give greater weight to the medical opinions of Dennis R. Pollack, Ph.D.; and (3) relying on a hypothetical posed to the vocational expert that did not account for all of Plaintiff's properly supported limitations.

**DISCUSSION**

**A. Plaintiff's Credibility**

Plaintiff first contends the ALJ erred by failing to provide valid reasons for finding Plaintiff not entirely credible in this case. ECF No. 19 at 12-16.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v.* Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. Tr. 21.

The ALJ first determined, in terms of Plaintiff's alleged physical impairments, his allegations were contradicted by the fact that he had not required

hospitalization, he had not been referred to a chronic pain management facility or neurologic specialist, and the medical evidence as a whole documented only minimal pathology, with no opinion that Plaintiff's physical impairments would completely preclude work functioning. Tr. 21-22. With regard to Plaintiff's alleged mental impairments, the ALJ noted Plaintiff had never undergone psychological hospitalization and treatment had been minimal, with no more than a prescription for antidepressant medication. Tr. 22. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative treatment suggests a lower level of both pain and functional limitation). The ALJ's references to Plaintiff's history of conservative treatment is a clear and convincing reason for discounting Plaintiff's testimony in this case.

The ALJ also found the objective medical evidence of record did not fully support the level of limitation claimed by Plaintiff. Tr. 21-26. A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (in determining credibility, the ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

As stated by the ALJ, despite Plaintiff's complaints of numerous physical impairments resulting in total disability, Tr. 22, Andrew Weir, M.D., noted on March 22, 2011, only slightly restricted range of motion of the dorsolumbar spine, but otherwise normal exam, Tr. 22, 513-517. Dr. Weir indicated the examination was unremarkable and concluded Plaintiff's subjective complaints were not

supported by objective findings. Tr. 22, 517. On June 7, 2011, Guthrie Turner, M.D., opined Plaintiff would be capable of lifting 50 pounds occasionally and 25 pound frequently, was limited to frequent handling, and was limited to occasional fingering. Tr. 23, 176-177. The ALJ further noted nurse Carolyn Hendrickson indicated Plaintiff presented with "mild" swelling of the hands but no other objective findings of physical abnormalities on October 13, 2011. Tr. 22, 533. 18 days later, on October 31, 2011, a medical report indicated no swelling in the extremities and a normal examination. Tr. 22, 541. On April 27, 2012, Arvin Klein, M.D., testified the objective medical evidence indicated no evidence of spinal cord compromise and degenerative changes were otherwise mild and appropriate for Plaintiff's age. Tr. 22, 46-49. He opined that none of Plaintiff's physical impairments were severe. Tr. 22, 46-47. A November 15, 2013, neurological examination by John Wurst, M.D., revealed no manifest symptoms or evidence supporting a diagnosis of Parkinson's disease. Tr. 22, 594-595. Dr. Wurst offered no specific treatment for Plaintiff's left hand tremors. Tr. 22, 595. On February 25, 2014, James Haynes, M.D., testified Plaintiff's left hand tremors appeared to be only mild. Tr. 23, 93-94. Dr. Haynes opined Plaintiff would have no exertional limitations, but Plaintiff's ability to handle with his left hand would be limited to frequent while fingering would be limited to no more than occasional. Tr. 23, 95-96.

In terms of Plaintiff's mental impairments and their corresponding symptoms, the ALJ noted the March 25, 2011, examination report of Robert Quackenbush, Ph.D., as evidence Plaintiff likely required repetitive instructions, but would still be capable of learning with repetitive and visual cues and that Plaintiff's ability to interact socially would be no more than mildly impaired. Tr. 24, 522. The ALJ further indicated the 2011 reports of James Bailey, Ph.D., and William Lysak, Ph.D., revealed Plaintiff was limited to simple and repetitive tasks and was capable of interacting socially on a superficial basis. Tr. 24, 147-148,

178-180. The ALJ also noted the April 27, 2012, opinion of Margaret Moore, Ph.D., which assessed Plaintiff as no greater than mildly to moderately limited in his mental capabilities. Tr. 24-25, 58-59, 573-575. The ALJ also discussed the significant limitations assessed by Dennis Pollack, Ph.D., in this case; however, the ALJ accorded those findings little to no weight and, as discussed below, the ALJ's determination in this regard is fully supported. Tr. 25-26.

As concluded by the ALJ, Plaintiff's assertion that he could no longer work due to severe limitations in the ability to stand/walk and that he could lift or carry no more than 10 pounds is not supported by the medical evidence of record. Moreover, the weight of the evidence of record supports the ALJ's determination that Plaintiff is no greater than mildly to moderately limited in his mental capabilities. It was proper for the ALJ to conclude Plaintiff was not entirely credible because Plaintiff's alleged level of limitation was not consistent with the objective medical evidence of record.

The ALJ finally found Plaintiff's daily activities were inconsistent with his assertion of disability. Tr. 21, 26. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ indicated Plaintiff testified he went out alone, took his dog out for walks, shops in stores for groceries, plays chess with a friend, and goes camping. Tr. 26. It was further noted by the ALJ that Plaintiff reported during a psychological evaluation that he spent time camping, fishing, driving, doing household chores, caring for his cat and spending time with friends. Tr. 26, 520. While one does not need to be "utterly incapacitated" to be disabled, *see Fair*, 885 F.2d at 603, it was proper for the ALJ to consider this level of activity as inconsistent with Plaintiff's assertion of totally disabling limitations, *see Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective complaints, which are fully supported by the record. Accordingly, the ALJ did not err by finding Plaintiff's allegations were not entirely credible in this case.

**B. Dr. Pollack**

Plaintiff next contends the ALJ erred by failing to accord proper weight to the opinions of Dennis Pollack, Ph.D. ECF No. 19 at 16-18.

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). As discussed below, no other medical professional of record has opined that Plaintiff has marked mental limitations as assessed in the check-box portion of Dr. Pollock's report. *See infra*. Accordingly, Dr. Pollock's April 2012 opinion is contradicted and may be rejected by "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043. Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports

based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-1464 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Dr. Pollack's April 2012 report indicated Plaintiff arrived for the evaluation on time, he was cooperative throughout the interview and testing, his thinking was logical and progressive, there was no indication of hallucinations or delusions, and no unusual anxiety symptoms were reported. Tr. 547. The results of the MMPI-2 testing gave Plaintiff an elevated F-scale, which suggested either he was exaggerating his difficulties or that he has an unusual personal history, Tr. 551-552, and Dr. Pollack noted the results of the personality testing revealed "a strong tendency to exaggerate his difficulties," Tr. 553. Dr. Pollack also filled out a Mental Medical Source Statement form opining Plaintiff had marked limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 556. Dr. Pollack does not provide an explanation for these check box opinions other than writing "see report" on the form. Tr. 557; *see Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

The ALJ assigned little to no weight to Dr. Pollack's opinions because the one-time evaluation was not supported by historical treatment notes; the marked limitations noted by Dr. Pollack were inconsistent with Dr. Pollack's own narrative as well as the longitudinal mental medical record which indicated very little treatment and objective findings of no more than mild psychological abnormalities; Dr. Pollack's opinions appear to have been based primarily on Plaintiff's non-

credible subjective symptoms; and Dr. Pollack's assessment were inconsistent with Plaintiff's daily living activities.[1] Tr. 26. This determination by the ALJ is fully supported.

The Court agrees with the ALJ's finding that the marked limitations noted by Dr. Pollack in the check-box portion of his report were inconsistent with his narrative report. The narrative does not describe any symptoms demonstrated by Plaintiff which would restrict his ability to perform activities within a schedule or maintain regular attendance, complete a normal workday and workweek, or perform at a consistent pace without an unreasonable number and length of rest periods. Moreover, no other medical professional of record has opined that Plaintiff has marked mental limitations. As discussed above, to the contrary, Dr. Quackenbush opined that Plaintiff likely required repetitive instructions, but would

---

[1]The ALJ also indicated he accorded little weight to Dr. Pollack's assessment because the mental evaluation was "at the request of the claimant's representative." The ALJ did not elaborate on the comment that the examination was at the request of Plaintiff's attorney; however, given there is no evidence of any actual impropriety, the undersigned finds that Dr. Pollack's opinion should not have been discounted on the basis of the source of his patient's referral. Nevertheless, as discussed below, since the ALJ provided several specific and legitimate reasons, supported by substantial evidence, for according little to no weight to the opinions of Dr. Pollack, any error based on the ALJ's comment that Dr. Pollack's examination was at the request of Plaintiff's attorney is harmless. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) (an error is harmless when the correction of that error would not alter the result). An ALJ's decision will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

still be capable of learning with repetitive and visual cues and that Plaintiff's ability to interact socially would be no more than mildly impaired, Tr. 522; the 2011 reports of Drs. Bailey and Lysak revealed Plaintiff was limited to simple and repetitive tasks and was capable of interacting socially on a superficial basis, Tr. 147-148, 178-180; and Dr. Moore assessed Plaintiff as no greater than mildly to moderately limited in his mental capabilities, Tr. 58-59, 573-575. As determined by the ALJ, Dr. Pollack's opinion is not supported by the longitudinal mental medical record. Tr. 26.

Furthermore, as indicated by the ALJ, it appears Dr. Pollack primarily relied upon Plaintiff's non-credible subjective symptoms. Tr. 26; 553 (for example, Dr. Pollack's narrative report indicated "the personality testing reveal a strong tendency to exaggerate . . . [h]owever, his personality test results could also be the result of a rather unusual personal history. This is certainly the case for Mr. Hutchinson who was raised as a girl until he entered school. People with a history of abuse frequently have elevated F-scale scores."). As noted above, the ALJ's credibility determination is supported by the evidence of record and free of error. *See supra*. A physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of Plaintiff. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Finally, as determined by the ALJ, the marked limitations noted in the check-box report are also inconsistent with Plaintiff's daily activities, as more fully discussed above. *See supra*.

As previously indicated, it is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee*, 94 F.3d at 522, and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g). Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, this Court's role is not to second-guess that decision. *Fair*, 885 F.2d at

604. Based on the foregoing, the Court finds the ALJ did not err by according little to no weight to the opinions of Dr. Pollack. The ALJ's ultimate RFC determination is supported by substantial evidence.

**C. Step Five**

Plaintiff lastly contends that the ALJ erred by relying on the vocational expert's testimony in response to a hypothetical not supported by the weight of the record evidence. ECF No. 19 at 19.

As determined above, the weight of the record evidence in this case supports the ALJ's RFC finding that Plaintiff was capable of performing a full range of work at all exertional levels, but could only frequently, rather than continuously, perform handling; occasionally finger with his left hand; and would have mild to moderate limitations in his abilities to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in work settings. Tr. 20.

At the administrative hearing held on July 25, 2014, the vocational expert testified that with the restrictions assessed by the ALJ, Plaintiff retained the capacity to perform a significant number of jobs existing in the national economy, including the positions of industrial cleaner, machine packager, and motor vehicle assembler. Tr. 125-131. Since the vocational expert's testimony was based on a proper RFC determination by the ALJ, Plaintiff's argument is without merit.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

///

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED January 18, 2017.




JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE